UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


DARNELL MISSOURI #389199,

        Plaintiff,

v.                                       Case No.   2:17-cv-00025
                                       HON.   GORDON J. QUIST

GARY VANSICKLE, et al.,

        Defendants.
_____/


<u>REPORT AND RECOMMENDATION</u>

        This is a civil rights action brought by state prisoner Darnell Missouri pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that while confined at the Newberry Correctional Facility (NCF) Chaplain Gary VanSickle and MDOC Special Activities Coordinator David Leach denied him Ramadan meals in 2016 in violation of his religious beliefs.   Defendants filed a motion for summary judgment.   (ECF No. 45).   Plaintiff filed a response.   (ECF No. 49).

        Plaintiff alleges that he is a long time Nation of Islam member, who is required to participate in the Ramadan fast.   On April 12, 2016, Defendant Leach issued a Michigan Department of Corrections Memorandum requiring an appropriate staff person at each prison to have any prisoner who is interested in Ramadan meals "sign up to participate" and identify the meal type requested.   This information was to be provided to "the CFA Special Activities Coordinator and Trinity Food Service Director/Manager. . . . no later than Friday, May 20, 2016." (ECF No. 46-2).   Defendant Leach explained that the deadline for approved religious fasts, such as Ramadan, was established at the request of the food service contractor and the MDOC Food

Service Manager so that the preparation of an adequate number of meals each day could be made to accommodate prisoners participating in the fast.    (ECF No. 46-5).

Plaintiff missed the deadline at Kinross Correctional Facility (KCF) and did not make a request for Ramadan meals until May 29, 2016.    Plaintiff was transferred to NCF on June 15, 2016.    Plaintiff was informed by Defendant Van Sickle that because he missed the May 20, 2016 sign-up deadline for Ramadan meals at KCF, he was not eligible for Ramadan meals at NCF. Plaintiff previously requested and received Ramadan meals by signing up a week before Ramadan or even after Ramadan started.    In 2016, which was the only year that Plaintiff was not allowed to participate in the Ramadan fast, Plaintiff made his request approximately one week before Ramadan began. (ECF No. 46-3, PageID.201-202). Plaintiff stated that he did not know about the sign-up deadline in 2016.    (PageID.203). Plaintiff has alleged violations under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First Amendment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).   If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.    *Id.* at 324-25.   The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."    *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).   The evidence must be viewed in the light most favorable to the nonmoving party.    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).   Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.   *Muhammad v. Close***,** 379 F.3d

2

413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).   However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.   *Anderson*, 477 U.S. at 251-52.   Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."   *Id.* at 252.   *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argues that Plaintiff is not entitled to monetary damages under RLUIPA.   The Sixth Circuit held that RLUIPA does not allow for money damage claims against prison officials in their official capacity. *Haight v. Thompson*, 763 F. 3d 554, 570 (6th Cir. 2014). Nor does RLUIPA provide for damages against state employees in their individual capacities. *See Washington v. Gonyea*, 731 F. 3d 143, 145 (2nd Cir. 2013); *Stewart v. Beach*, 701 F. 3d 1322, 1334-35 (10th Cir. 2012); *Sharp v. Johnson*, 669 F. 3d 144, 154-55 (3rd Cir. 2012); *Sossamon v. Lone Star State of Tex.*, 560 F. 3d 316, 327-28 & n. 23 (5th Cir. 2009); *Nelson v. Miller*, 570 F. 3d 868, 889 (7th Cir. 2009); *Smith v. Allen*, 502 F. 3d 1255, 1272-75 (11th Cir. 2007).   This Court has repeatedly held that RLUIPA does not provide a cause of action for damages against state actors in their individual capacities. *See, e.g. Green v. Tudor*, 685 F. Supp. 2d 678, 699 (W.D. Mich. 2010); *Wood v. Mich. Dep't of Corrs.*, No. 1:12-cv-1342, 2013 U.S. Dist. LEXIS 79310, 2013 WL 2458390 (W. D. Mich. June 6, 2013); *Crump v. Prelesnik*, No. 1:10-cv-353, 2013 U.S. Dist. LEXIS 45126, 2013 WL 1337790, at *1 n. 1 (W.D. Mich. Mar. 29, 2013); *Hall v. Martin*, No. 1:10-cv-1221, 2012 U.S. Dist. LEXIS 63300, 2012 WL 1579334, at *6 (W.D. Mich. Mar. 29,

- 3 -

2012).    In the opinion of the undersigned, Plaintiff's claim for damages under RLUIPA should

be dismissed.

Defendants assert that Plaintiff's First Amendment claim for damages should be

dismissed on the basis of qualified immunity. Government officials, performing discretionary

functions, generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known.    *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d

425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).    An "objective reasonableness" test is used to determine whether the

official could reasonably have believed his conduct was lawful.    *Dietrich*, 167 F.3d at 1012;

*Anderson v. Creighton*, 483 U.S. 635, 641 (1987).    "Qualified immunity balances two important

interests-the need to hold public officials accountable when they exercise power irresponsibly and

the need to shield officials from harassment, distraction, and liability when they perform their

duties reasonably."    *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the

facts as alleged or shown make out a constitutional violation or whether the right that was allegedly

violated was a clearly established right at the time of the alleged misconduct.    *Id.* at 232-233.    If

the court can conclude that either no constitutional violation occurred or that the right was not

clearly established, qualified immunity is warranted.    The court may consider either approach

without regard to sequence.    *Id*.

While "lawful incarceration brings about the necessary withdrawal or limitation of

many privileges and rights," inmates clearly retain the First Amendment protection to freely

exercise their religion.    *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted); *see*

- 4 -

*also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials").   Although, inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests."   *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).   To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

> 1.      does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2.      are there alternative means of exercising the right that remain open to prison inmates;
>
> 3.      the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4.      whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors.   *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").   If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest.

*Flagner*, 241 F.3d at 484 (citations omitted).    It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest.    *Id.*

Defendants assert that the deadline was imposed so that an adequate number of meals could be provided to accommodate prisoners who sign-up for the Ramadan fast. Defendants state that Plaintiff had an alternative means to fast, by purchasing noodles from the prison store and by bringing fruit back to his prison cell.    Defendants explain that without a sign-up deadline for Ramadan meals there would be problems with food preparation and distribution. Finally, Defendants assert that there are no alternatives to a sign-up sheet that could accommodate prisoners who would like to participate in the Ramadan fast.    In addition, Defendants assert that the sign-up sheet did not violate clearly established law and that they are entitled to dismissal of Plaintiff's claim for monetary damages.

This issue was addressed in *Hardrick v. Maclaren*, 2:17-cv-29, in which prisoner Hardrick was also denied Ramadan meals due to his failure to sign-up by the May 2016 deadline at KCF.    In *Hardrick,* the undersigned explained:

> Defendant responded to Plaintiff's interrogatories regarding the deadline.    Defendant stated that "[t]he deadline is for the Chaplains to gather all the information from prisoners of Muslim faith who wanted to participate in Ramadan and forward all the information on to [the] Special Activities Coordinator, including how many of each type of meal will be needed."    (ECF No. 27-2, PageID.122-123).    Defendant further stated that "[t]he State of Michigan does not provide an alternative means if the prisoner misses the deadline."    (*Id.* at PageID.123).    Defendant responded that she could not answer the important question of whether placing someone on the list after the deadline, could have a significant impact on other prisoners, guards or officials, or prison resources.

- 6 -

*Id*.  Defendant indicated that Islamic prisoners receive Ramadan meals if they transfer to the prison after the deadline.   New converts to Islam after the deadline must wait until the next year before being eligible for Ramadan meals.   (*Id*. at PageID.124).

Defendant argues that Plaintiff had the opportunity to timely sign-up for the Ramadan meal, but failed to meet the deadline. According to Defendant, no other prisoner at KCF had this issue. Defendant has made no effort to explain why she imposed a rigid non-flexible deadline and why she could not accommodate Plaintiff's late request.   Although, it seems obvious that the prison would like to know the number of meals to prepare, it seems equally obvious that there exists some flexibility in meal service especially over the course of several days.   The exact reasons for the rigid deadline are not a matter of record.

The 2016 Ramadan fast occurred between June 6 and July 5.   On June 6, 2016, Plaintiff was able to receive a Ramadan meal, after all other prisoner's had been served who were on the list.   Defendant has failed to explain why Plaintiff could not continue to receive leftover Ramadan meals after this date.   Defendant's argument is that she refused to allow Plaintiff a Ramadan meal because he did not sign-up by her inflexible deadline, and that she based her deadline on prison policy.   Defendant provides no explanation to support the need for such an inflexible deadline.   Defendant has not attempted to satisfy any of the *Turner* factors.   In the opinion of the undersigned, Defendant has failed to show that placing an inflexible barrier to Plaintiff's ability to exercise his First Amendment religious rights entitles her to qualified immunity from liability.

Plaintiff has also moved for summary judgment.   It is undisputed that Plaintiff practices the Islamic faith and that he has received Ramadan meals each year that the MDOC recognized his faith except in 2016.   Plaintiff argues that there was no penological justification to deny him Ramadan meals in 2016.   Plaintiff points to two cases that support his argument.   In *Reischauer v. Jones*, 2009 WL 232625; 2:06-cv-149 (W.D. Mich. Jan. 29, 2009) the Court issued an opinion on the plaintiff's religious rights claims after trial.   In that case, the court explained that the prisoner missed the deadline to sign-up for Ramadan meals at KCF.   The prisoner had changed his religious preference from Protestant to Muslim on August 5, 2003.   Ramadan began on October 26, 2003, and ended on November 24, 2003.   The prisoner first requested a Ramadan meal on November 7, 2003, and was placed on the list despite his failure to meet the sign-up deadline.   Plaintiff states that the fact that KCF has accommodated prisoners who made requests after the

- 7 -

deadline, shows that no penological interest was served by denying him Ramadan meals in 2016.

The Seventh Circuit held that prison officials who had denied a prisoner Ramadan meals for the reason that the prisoner missed the sign-up deadline were not entitled to summary judgment on either the merits of the claim or based upon qualified immunity.  *Conyers v. Abitz*, 416 F.3d 580 (7th Cir. 2005).    The Seventh Circuit explained:

> The defendants offered the general explanation that they imposed the sign-up deadline to give the prison's food-service and segregation unit time to prepare and coordinate meal accommodation.

> The defendants also claim that they cannot be blamed for Conyers's failure to anticipate Ramadan in time to contact the chaplain on his own before the deadline. But they offered no evidence to explain the additional effort that would have been required to include Conyers in the fast. They rest instead on the rigid and unsupported assumption that a sign-up deadline like the one imposed is a reasonable administrative requirement under any circumstances. See *Freeman v. Arpaio,* 125 F.3d 732, 737 (9th Cir.1997) (requiring sign-in sheets for participation in religious activities was not a substantial burden on free exercise). Nothing in this record indicates that convenience and notice to prison staff justified the rejection of Conyers's request to participate in the fast, especially since he missed the notification deadline by just four days and in fact alerted the defendants that he desired to participate in the Fast of Ramadan two days before it began. It is notable in this connection that the prison was willing to accommodate Muslims transferred from other institutions after the notification deadline. See *Makin v. Colo. Dep't of Corr.,* 183 F.3d 1205, 1213–14 (10th Cir.1999) (holding that staff availability and proper allocation of resources were not sufficient reasons for refusing to permit Muslim inmates confined in segregation to participate in Fast of Ramadan); *Love v. Reed,* 216 F.3d 682, 690–91 (8th Cir. 2000) (sanitary concerns and potential inmate discontent over providing another inmate with food to prepare and consume on the Sabbath were not

sufficient penological interests); compare *Williams v. Morton,* 343 F.3d 212, 220–21 (3d Cir.2003) (simplified food service, security, and budgetary concerns are legitimate penological interests justifying substitution of vegetarian meals for Halal meals with meat).

The defendants also urge us to affirm on the basis of qualified immunity; in their view, they "could not have been expected to know that not providing [Conyers] with advance written notice of the sign-up deadline would violate his freedom of religion." But this formulation misapprehends the nature of Conyers's free-exercise claim. The defendants argue only that Conyers was responsible for contacting the prison chaplain, but they present no evidence that Conyers knew that there *was* a sign-up deadline. They have tried all along to fault him for not realizing on his own that Ramadan was approaching. But, of course, he did realize that Ramadan was about to start, and he asked to participate in the fast before it commenced. The relevant inquiry is whether, at the time the defendants refused Conyers's request, the law was clearly established that prison officials must have a legitimate penological interest before imposing a substantial burden on the free exercise of an inmate's religion, even when that inmate is in disciplinary segregation. We have held, in the specific context of Muslim inmates who were denied pork-free meals while confined in disciplinary segregation, that prison officials must demonstrate a legitimate penological objective for decisions that impede religious exercise. *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir.1990); see also *McEachin v. McGuinnis,* 357 F.3d 197, 204 (2d Cir.2003) (free exercise is violated when generally applicable prison policies fail to accommodate segregated inmate's religious dietary requirements). So that brings us back to the defendants' asserted interest and the insubstantial evidence they offered to support it.

*Id*. at 585-586. Plaintiff has asserted that other officers at KCF were willing to accommodate him and that Defendant McQuiggin acted unreasonably by disallowing accommodation.

*Hardrick v. MacLaren*, 2:17-cv-29 (W.D. Mich. Report and Recommendation, June 18, 2018 (ECF No. 43), adopted on July 20, 2018 (ECF No. 48)).

In *Hardrick* the defendants failed to set forth any reason to justify the imposition of the sign-up deadline.   Defendants have asserted the obvious reason in this case, that the food service needed to know the number of prisoners and the type of Ramadan meals requested in order to accommodate those prisoners who wished to engage in the Ramadan fast.   As stated in *Hardrick*, that is a reasonable explanation for the sign-up deadline.   Defendants in this case, just like in *Hardrick,* fail to explain why the sign-up date is inflexible and how accommodating the few prisoners who fail to sign-up before the deadline would impose a burden on the prison.   In *Hardrick* there were extra Ramadan meals available that could accommodate prisoners at KCF. Whether there were extra meals to accommodate prisoners at NCF is not a matter of record.   Why a prisoner who made a late request for Ramadan meals could not be accommodated at NCF, especially when it appears that very few prisoners missed the sign-up deadline, is not a matter of record.   In the opinion of the undersigned, like the record in *Hardrick,* a question of fact exists regarding whether Defendants could have accommodated Plaintiff's First Amendment right to participate in Ramadan by providing Plaintiff with Ramadan meals despite his late request.

Although Plaintiff has not requested injunctive relief in his complaint, Defendants move for dismissal of Plaintiff's injunctive relief requests under both the RLUIPA and the First Amendment.   Defendants state that Plaintiff requests injunctive relief to prevent the MDOC from imposing a deadline to sign-up for Ramadan meals.   In the opinion of the undersigned, it is not the deadline that creates the problem.   The imposition of the sign-up deadline is a reasonable policy.   It is the application of an inflexible deadline that Defendants use to refuse to accommodate prisoners who may sign-up late that creates the issues asserted by Plaintiff.

- 10 -

Defendants have not shown that it is a burden to accommodate prisoners who may sign-up late for Ramadan meals. Therefore, assuming that Plaintiff is requesting injunctive relief, as suggested by Defendants, it is recommended that the Court dismiss Plaintiff's request to prevent the MDOC from making a sign-up deadline for Ramadan meals.

In summary, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 45) be granted, in part, dismissing Plaintiff's RLUIPA claims and Plaintiff's claims for injunctive relief.   It is recommended that the Court deny Defendants' motion for summary judgment on Plaintiff's First Amendment claims for monetary damages.

NOTICE TO PARTIES:    Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.    28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).    Failure to file timely objections constitutes a waiver of any further right to appeal.    *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).    *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:    January 23, 2019

- 11 -